May it please the Court, good morning, Your Honours. I am Jim Tadalopirian on behalf of Appellant Sarkar, International. I have reserved three minutes, Your Honours, for you to follow with me. The Court of International Trade below had dismissed Plaintiff Sarkar's judicial review action erroneously to submit for purported lack of finality of agency action and therefore for purported failure to state a claim on which relief could be granted. Here on appeal, we seek reversal and remand to the CIT for a judicial grant, a judicial review of our customs, final agency action that imposed a fictionalized MSRP, meaning manufacturers suggested retail price-based penalty decision of December 29, 2005. This is a wrongful remedy case, we submit. This is the case where the penalty remedy, MSRP, fictionalized remedy, is the shoe that doesn't fit. And the customs would like to see swept under the rug or at least to go away in customs regulatory adjudicative program that we suggest seeks to escape CIT judicial review. Mr. Thomas. Mr. Tuttle. Yes. My main concern about this particular case is whether or not the CIT has jurisdiction here at all. Could you cover that for me, whether or not jurisdiction lies in the CIT? Of course, Your Honour. Any of the statutes that they have within their equivalent of jurisdictional limits? The 28 U.S.C. 1581 jurisdictional basis for the CIT, subsection I, paragraphs 1, 3, and 4, as referenced by administration and enforcement under paragraph 4, we submit our correct and applicable jurisdictional basis here. The Corbyn Treaty deals with embargoes. That's correct. And you had a seizure on one of our personal goods. Understood, Your Honour. Now that seizure was brought by customs, and this is not a seizure case, I hasten to add to this point, but rather a case for judicial review of the penalty activity of customs only. That seizure you asked about, Judge Lurie, was based upon Tarifact section 526E for elephant, and it's expressly incorporated reference to Lanham Act section 42, that's 15 U.S.C. 1124. Now the Lanham Act section 42 does provide the embargo you've asked about, and that we say has been applied to it. That embargo in 1124, section 42 of Lanham, is sweeping. It's outright. But the goods here were seized, right? That's correct. That is the mechanism, the block, the port of entry of customs utilized in the 15 Tarifact 526E as a mechanism methodology to stop the goods that were alleged to be counterfeit. But the basis upon which the embargo appears here, and it's different from Kmart against Cartier, because 1124, the section 42 of Lanham, coupled with 15 526E together are a complete embargo. However, the trademark owner's option under 1124, that's the Lanham Act 42, is merely that. It's an option. It's not requisite. And one trademark owner may, repeat may under the statute, record its trademark with the customs service, quote, in order to aid the customs officers and the courts to apply and enforce the embargo. But the embargo is, and section 42 of Lanham reads, no merchandise that copies or simulates a name or a trade name or a trademark, no such merchandise shall be entered, and I'll quote the words of the statute, into the customs territory of the United States. That is an embargo. It's much more sweeping and broader than the Kmart against Cartier. Yes, the dean. Yes. Excuse me. I'm glad you got to Kmart because there seems to be some language in the Supreme Court's decision in Kmart that seems to me to be important in this case. It says, an importation prohibition is not an embargo if, rather than reflecting the governmental restriction on the quantity of a particular product, it merely provides a mechanism by which a private party might, at its own option, enlist the government's aid. It goes on. And the court said that 1523A, I'm sorry, 1526A did not present an embargo situation. Right down here. Here, it's true, as you point out, that we're concerned with 1526E. But it does seem to me that 1526E is, you know, operationally, contextually, textually tied to 1526A. So it's hard for me to see how Kmart doesn't control here. Understood, Your Honor. And firstly, in our papers and our briefs, we have said that Kmart against Cartier doesn't apply. But I don't say it was incorrectly, we don't submit that it was incorrectly decided. As a matter of fact, 1526E is different from and broader than 1526A, which was decided in Justice Moon's majority opinion and the jurisdiction opinion of Kmart. But 1526E, the Kmart seems to go off on the proposition that this is something that's basically within the trademark owner's purview. So it's not governmental action. And certainly, that seems to be the case. 1526E is so tied to 1526A because, obviously, if the trademark owner consents, there's no seizure. The trademark owner can give consent under 1526E. So why aren't we dealing with the same concerns that control the outcome in Kmart? With respect to this, Your Honor, the two, 1526A and 1526E, are quite different. And 1526E is not only broader, more inclusive, and still due to its express incorporation of Section 42 of the Land Act. But, moreover, it was enacted, or I should say it was amended, 1526E, almost a decade after Kmart against 58. It was broadened, and it reads, the goods shall be seized and shall be destroyed in forfeiture cases. And again, seizure and forfeiture are not an issue in this appeal. So 1526E and its expressly incorporated Land Act 42 are a horse of a different color. Completely horseshoe. It's always good when the judge is asking questions of his documents. Isn't that issue here, from a jurisdictional standpoint, as to whether you have a right to appeal to the CIT? A right to appeal? Can you say that the question of seizure isn't an issue here? Correct, it is not. This is not a seizure case, it's not a collection case. But there was a seizure. There was a seizure. And that's gone by the boards. The merchandise is of low value, and the client, for whatever economic cause of litigation reasons, decided not to bring it to the government on that point. But a seizure is not an embargo. And the Court of International Trade lacked jurisdiction. And your other issues go by the boards, is that right? Well, sir, the court below the CIT decided that it did, does have jurisdiction on this case under 1581, 3E, the embargo. But we can review that. Absolutely, yes, your honor. Questions are always reviewed. Of course, we couldn't agree more. I'm only giving, however, the rationale as to why we and why the CIT below held in favor of embargo jurisdiction. Because it is an embargo. It's a horse of a different color from the old 526A decision almost 20 years ago in 1988, and came out against it. As well, we said so in our reply brief. We submit that the CIT has jurisdiction under 1581I, paragraph 1. Yesterday. And we decided that pages 10 and 11 of our reply brief, a collection of cases in which duty amount, revenues, or disputes were not necessary for finding jurisdiction under 1581I. And of course, citing, most importantly, the decision of this court in Conoco against the United States in 1994, under 1581I1. So we think there are two solid, completely correct, and lawful bases for jurisdiction. 1581I, paragraph 1, and paragraph 3, with the administration enforcement of this penalty under paragraph 4 of 1581I. But, Mr. Tull, the underlying issue, we started off this conversation, is still jurisdiction. Jurisdiction has to lie with CIT for us to have jurisdiction ourselves. Seizure was done under what section of the statute? Seizure was done under Tarifat 526E for Elephant, and its incorporation, express incorporation of the embargo it enforces of section 42. Wait, wait, wait. Why is there an embargo on seizure? It was done on the basis of trademark infringement. That's the allegation of the government. And the reason, Your Honor, is that the seizure is merely a mechanism, mechanism of enforcement, which Justice Brennan, in fact, of course, realized a majority opinion and came out against Cartier. That was a different case, a different horse, an earlier era, before 526E and 526F was adopted, de novo, anew by the Congress. So it's a broader, much broader jurisdictional basis nowadays since the 1996 adoption, amendment of 526E and adoption of the penalty issue in Elephant. Does it take private action on the part of the citizen? No. Or is it easier to take place? No, Your Honor, and that's the key point I tried to bring out just a bit earlier. It's strictly optional. Under the Land Act 42 and 526E, the recordation of a registered trademark with customs is purely optional, quote, in order to assist customs officials in trying to stop the border infringing or counterfeit merchandise. It's an option. The war is sweeping now. It's an outright embargo, and that is why the jurisdiction lies under this provision that we've been discussing now. Is there a topic you want to state and remain with you about all time? Yes, thank you, Your Honor. If there's no further questions at this point. Questions? May it please the Court. The CIT erred in ruling that it had jurisdiction in this case. It based its jurisdictional ruling on its- Does that mean that all the other issues that it wants to argue, that the quantification of value, we don't have to? The Court need not reach to the other issues. It's our position that the decision, that the judgment below can be affirmed on either of two grounds. On the ground that the Court of International Trade adopted, or on the ground of lack of jurisdiction. I think the most pressing issue here is the jurisdictional issue. And it's our contention that there was no jurisdiction below. You're saying the seizure is not in the file? Yes. Yes. But also that the decision below is erroneous on the jurisdictional question because it failed to follow the Supreme Court's decision in the Kmart corporation case. There in Kmart, the Supreme Court's distinguished between import prohibitions and embargoes. In import prohibitions is a much broader category and embargoes being much more narrower. And then in the Kmart case, the Supreme Court went further and defined embargoes within the meaning of 1581I3. The Supreme Court said that it was adopting the ordinary meaning of the term embargo. And that embargo is, quote, a governmentally imposed quantitative restriction of zero on the importation of merchandise. The Supreme Court then went further, quoting from Black's Law Dictionary, and stated, quote, that an embargo is a government order prohibiting commercial trade with individuals or businesses of other nations. And it said further that an embargo is a policy which prevents goods from entering the nation which may be imposed on a product or on an individual country. Doesn't a seizure accomplish almost the same thing as an embargo? Once you keep seizing the goods, then I don't import them anymore. They're, in effect, embargoed. There's still a difference because an embargo has to be directed to a particular product or goods or merchandise from a particular nation. And that's what we did not have in this case. There was no embargo against the travel charges for personal digital assistance that Saqqara was seeking to import. There was no embargo against many keyboards for personal digital assistance. So there were no embargoes in place against the goods that Saqqara was attempting to import. So under the Supreme Court's language in KBAR, there is no restriction or quantitative limit directed to the products in question. We don't agree with your jurisdiction. What about the second round? The second round, the- On which the court decided. Yes. The Court of International Trade found that there was a failure to plead a proper cause of action. And their holding there is plainly correct. Saqqara, in this case, failed to demonstrate standing. It had not paid any penalty, and its fear of possible enforcement action does not give Saqqara standing. It was assessed a penalty. Excuse me? It was assessed a penalty. A penalty was issued, a mitigated penalty, which under the- A penalty nonetheless, and it didn't pay. Correct. But under the regulation, 19 CFR 171.22, that mitigated penalty decision was in effect for only whatever time is stated in the decision. 30 days? 30 days in this case. The letter in this case said that if you pay within 30 days, everything is resolved. Saqqara did not pay within the 30 days.  The violation is, you were in violation, your goods were seized, but no penalty has been collected from you. Why would anyone pay if all I have to do is wait 30 days and have it expired? I assume that companies want to be in compliance. They want to have a good record with law enforcement in the United States, so that it would be in the interest of certainly some companies to make these payments. But- Is there a collection action that started after the 30 days? No. No collection action was ever stated, was ever started. And that's another reason why there is no finality of agency action in this case. Under the statute, there is still discretion in the customs administrator to decide whether or not to go forward with any particular enforcement action. And if he decides to go forward, he must make a referral to the United States Attorney, who then also has discretion as to whether or not an action should be brought. And then if actions are going to be brought to enforce these penalties, they, pursuant to statute, must be brought in the district courts. And that's under 28 U.S. Code 1355, which provides that all actions to collect or enforce penalty must be brought in the district courts. So not only does the seizure have to be challenged in the district courts, but all actions to collect penalties of this nature have to be brought in the district courts. When is the period for, what is the time period for bringing that sort of an action? I meant to check that, but I, I'm not absolutely sure, but I think it may be six years. There's a statute of limitations for actions brought by the United States, and I believe it's six years. I don't have that particular statute. The only reason I have that, there is 1621. I guess it's, I'm not sure if this is 19 or 20. It says no suitor actually recovered in the pecuniary penalty should be sued unless the suit is commenced within five years after the time of the alleged offense was discovered. Is that it? Your Honor, I'm sorry. I don't have that right in front of me, but that sounds like it from your reading it. I apologize for not checking it before. In other words, he says it is right. Yeah. Well, if he's reading it, it's certainly- Well, I will confess that I believe this is title, it's either title 19 or title 28. I'm just not sure. I apologize. I did not check it. I did take a look at it. Well, you can't anticipate every question that's been asked. Well, the point is, in fact, in a case like this, the limitations period is one. There would be a moot issue with that. Certainly. But here, there's no finality of agency action in the first place, and there's no injury to the company. The company have paid the penalty, and the fear of prosecution does not give it standing. So, in this case, there are no consequences from the decision, the letter that they are seeking to challenge in the Court of International Trade. If I could just address the jurisdictional issues a little further, I think the failure state courts of action is very clear. On the jurisdictional issues here, as the court was noticing, there is a similarity between 1526A and 1526E. Both provisions depend on the trademark owner for enforcement. As the court pointed out, 1526A is the provision that was at issue in the Kmart case. Like 1526A, 1526E also depends on the consent of the trademark owner. And then I would also point out that- Do you need the same consent if you're proceeding under the Lemon Act 11.4? The- What we're looking at here is government action in the sense that it is a seizure. And all the seizures would go forward under 1526E, which in effect enforces 15 U.S. Code 11.24. But under the 1524, 1526A and E, you would need the private party's request. The private parties can at that point in time say no to consent to the importation. There would be no seizure under that statute, right? The written consent has to be before the seizure. No, but I mean the private party can say, we don't want you to seize that particular bundle of goods coming in because we consent to it. So the private party does have control over whether or not the seizure is undertaken. Well, you need to have the documentation of written consent before the seizure. I understand. You have to have the paper. I understand that. But the trademark owner can say, don't seize those goods before they come in. Yes. Right? Yes. So they can grant consent. Yes. So the goods are not seized. Beforehand. Does that same implication apply to the language of 1124, where the trademark owner really is not involved if the government wants to act on its own? Well, if the importer has documentation in advance showing written consent from the trademark owner. Maybe I'm not making myself clear. If there's no consent under 1124, can the government act on its own in spite of the trademark owner saying, no, don't take the goods. Do not seize the goods. I'm afraid there might be a double negative in there. Is this an action where only the trademark owner can take an action to exclude or seize the goods because it violates its trademark? Or can the commission initiate a proceeding on its own? Well, but all seizures are taken by the government. So the government would go forward with the seizure. But that's their own initiative. All seizures are a government initiative. But then the question is whether or not you have written consent. If the importer has documentation showing written consent of the owner of the trademark and he has that documentation available, then presumably the goods would not be seized. If the documentation is presented, then the goods would not be seized. But if they confiscate goods and the trademark owner is sitting on his hands and not proceeding, therefore they're implying permitting them to come in but not an actual written document, would the commission take action? If there is no written consent in advance, the customs can seize pursuant to the statutes, pursuant to In other words, they come into a court and customs sees, s-e-e-s, that there is a trademark violation, they can take action. Yes. If there's no written consent. I didn't hear the question. If there's no written consent. Correct. Correct. Now, I would also point out that in the Kmart decision itself, in footnote 6 of that decision, the Supreme Court also pointed to the Lanham Act, and pointed to 15 U.S. Code 1124 as being another statute where the trademark owner is involved in the enforcement of the law. And that being another case which is very much like 1526A, where the trademark owner is involved. So, not only do we not have an embargo in the sense, the common ordinary understanding of the term embargo that the Supreme Court adopted in the Kmart case, because there's nothing directed to the goods in question. There's no prohibition against these mini keyboard chargers. There's nothing directed against these goods. Because we have involvement of the trademark owner in enforcement of the law. And that was pointed to by the Supreme Court in footnote 6. The 526A places the control within the hands of the trademark owner. Is that correct? Yes. Yes. So it's under the trademark owner. Now, under 1124, that's not required. The government can act on its own. Even according to the footnote in Kmart, footnote 6. Because that's what Justice Scalia points out in his dissent. Yes, but what I'm pointing out is that the trademark owner is significantly involved in enforcement of the law. Because for first, under 151124, the trademark owner may provide information on his trademark to the government so that it's recorded that he does in fact have a trademark. Or he may not. He doesn't have to. That's true. And the government can't force him to do that. That's true. But I think it actually cuts the other way. If the trademark owner provides this information to the government, then it's much more likely that his trademark will be enforced. But then you're talking about 1526A and not 1124 of the landmark. It seems to be a separate statute giving the government authority to seize the goods on its own without any action by the trademark owner. What I'm talking about is the combination between 11 U.S. Code, excuse me, between 15 U.S. Code 1124 and Section 1526E. 1526E enforces 1124 of the landmark. And that the trademark owner is involved in enforcement in two ways. It's involved in enforcement by providing information that is recorded so that the government is aware of valid trademarks and then is able to take action. And then secondly, the trademark owner is involved through 1526E because if they give their consent, then the goods need not be forfeited. That's the bottom line. Thank you, Ms. Gershman. My pleasure. Mr. Tuttle has a couple of minutes to rebut. Thank you, Your Honor. I'd like to touch on two things only if I may. Firstly, the jurisdiction held under Cayman v. Cargill, as I've said earlier, is a narrower, narrower education. And we don't disagree with it. We don't say it's incorrect. It just doesn't apply here. It doesn't do any good to disagree with a Supreme Court decision. No, sir? At the same time, acknowledging, as Judge O'Driscoll has pointed out, the very strong three-member dissent was a strenuous dissent, but we don't argue with the majority ruling that came up against it. We say it does not apply. Now, coming to the trademark owner involvement, Your Honors have been quizzing both counsel about here today. I would just touch on two things. Number one, Tariff Act 526E for Elgin, by its expressed terms, reads that alleged counterfeit merchandise shall be seized. Nothing to do with trademark owner consent. It reads, honored, I'm quoting from the second line of 526E, and in the absence of the written consent of the trademark owner, forfeit, in that case. So it's a two-step dance. And initially, Customs has full authority, and indeed obligation, of the Washington Congress to seize an alleged violation of 526E. Now then, 526E, in the first line, incorporates, by reference, Lanham Act, Section 42, that's 15 U.S.C. 1124. And that act, as Your Honors pointed out, leaves trademark, I've run over time here, Your Honor. Finish your thoughts. Thank you. Leaves the trademark owner only the option of recording its mark. It's an assistance to the Customs offices, but it does not diminish in one bit the embargo that is imposed by 1124. Thank you, Your Honors. Thank you, Your Honor.